**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MELISSA S. MALONE,**

       **Plaintiff,**

                               **Civil Action 2:15-cv-78**
   **v.**                            **Judge James L. Graham**
                                 **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Melissa S. Malone, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## I.    BACKGROUND

Plaintiff protectively filed an application for disability insurance benefits on May 23, 2011, alleging that she has been disabled since May 26, 2010.  She subsequently amended her onset date to May 1, 2011.  After Plaintiff's initial application and request for reconsideration were denied, she requested a *de novo* hearing before an administrative law judge.  Administrative Law Judge Nino A. Sferrella ("ALJ") held and evidentiary hearing on August 7, 2013, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 37-83.)  Jerry O'Shefsky, a vocational expert ("VE"), also appeared and testified at the hearing.  On August 28, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 19-30.)  On November 17, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff advances two interrelated errors.  Specifically, Plaintiff asserts that reversal is warranted because (1) the ALJ's evaluation of treating source Muhammad Kahn, M.D., is not supported by substantial evidence, and (2) the ALJ failed to provide good reasons for the weight assigned to the Dr. Kahn's opinion.   The Undersigned limits her discussion of the record to evidence bearing on these contentions of error.  In addition, Plaintiff's challenges to the ALJ's consideration of Dr. Kahn's opinions relate solely to the ALJ's evaluation of the non-exertional limitations Dr. Kahn opined.  Thus, although the record reflects that Plaintiff sought treatment from Dr. Kahn for both her mental and physical impairments, the Undersigned has limited discussion to his treatment notes that reflect his treatment of her alleged mental impairments.

2

## II.    RECORD EVIDENCE

Treatment records from Dr. Kahn, Plaintiff's primary care physician, reflect that on June 1, 2010, Plaintiff reported that she was "having anxiety and feeling panicky," and also that she had "been crying, having tremors in the hands, and SOB [shortness of breath]."  (R. at 320.) Upon examination, Dr. Kahn observed that Plaintiff was "very anxious and crying."  (*Id.*)  It appears that Dr. Kahn, however, failed to complete a check-the-box portion of the treatment note form that reflected any symptoms given that he failed to mark any of the symptoms Plaintiff had reported and that he had observed.  Under the "Assessment/Plan" portion of his treatment note form, Dr. Kahn diagnosed anxiety and panic attacks and prescribed Xanax and Zoloft.

 Dr. Kahn's records from a June 7, 2010 visit reflect that he again did not complete a check-the-box portion of the form relating to symptoms.  He did, however, note Plaintiff's "[h]istory of anxiety and depression" under the "Assessment/Plan" portion of the progress note form.  (R. at 319.)

In a progress note from a June 29, 2010 visit, Dr. Kahn again noted Plaintiff's diagnoses of depression and anxiety and that he had prescribed the medication Zoloft.  (R. at 310.)

On January 24, 2011, Plaintiff reported that her anxiety and panic attacks were "getting worse again."  (R. at 312.)  Dr. Kahn increased her Zoloft medication.

A February 3, 2011 treatment note from a certified physician's assistant reflected Plaintiff's history of anxiety and depression and that she was being treated with Zoloft, among other medications.  (R. at 315-16.)

On January 25, 2012, Plaintiff again complained of anxiety and panic attacks.  (R. at 295.)  Dr. Kahn prescribed Xanax.  (R. at 295-96.)

On March 4, 2013, Dr. Kahn offered his opinion regarding Plaintiff's exertional and non-exertional impairments.  (R. at 506-07.)  With regard to Plaintiff's non-exertional impairments, Dr. Kahn opined that Plaintiff's condition was likely to deteriorate if placed under stress associated with a job.  (R. at 506.)  He further opined that Plaintiff was likely to have partial or full day unscheduled absences from work occurring five or more days per month due to her diagnosed conditions and/or the side effects of her medications.  Within the "remarks" portion of the form, Dr. Kahn noted Plaintiff's history of depression, anxiety, and panic attacks, and stated that she "cannot work in stress conditions[s] and may have to tak[e] unscheduled [time] off from work."  (*Id.*)

### III.   THE ADMINISTRATIVE DECISION

On August 28, 2013, the ALJ issued his decision.  (R. at 19-30.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

4

gainful activity since May 26, 2010, the alleged onset date. (R. at 21.) The ALJ found that

Plaintiff had the severe impairments of diabetes mellitus and a depressive disorder. (R. at 22.)

He further found that Plaintiff did not have an impairment or combination of impairments that

met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart

P, Appendix 1. (R. at 23.) At step four of the sequential process, the ALJ set forth Plaintiff's

RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the claimant
> has the residual functional capacity to perform light work . . ., except that she is
> precluded from climbing ladders, ropes, and scaffolds. She should avoid all
> exposure to hazards including moving machinery and dangerous heights, because
> of the possibility of dizziness. Mentally, she retains the ability to perform 1 to 4
> step tasks with no multi-tasking, and no requirement for rapid task completion.
> Her interaction with others needs to be on a conventional level, without conflict
> resolution or persuading others. Further, [Plaintiff] should work in a static work
> environment where change is explained and gradually introduced.

(R. at 24.) In reaching this determination, the ALJ accorded "great weight" to a March 2012

opinion of a state-agency reviewing psychologist, and "little weight" to an August 2011 opinion

of a state-agency reviewing psychologist. (R. at 27.) The ALJ also assigned "significant

weight" to the opinion of a consultative examiner. (*Id*.) Finally, the ALJ assigned "some

weight" to Dr. Kahn's March 4, 2013 opinion, reasoning as follows:

> The [ALJ] does not give this opinion controlling weight, but gives it some weight,
> in that the physical functional capacity allows for lifting from 10 to 20 pounds,
> however the reductions on sitting and walking do not appear to be consistent with
> the objective medical records as enumerated herein. Further Dr. Kahn attempts to
> use mental diagnoses for support of the physical capacities assessment. This
> doctor is not a mental health specialist, and has only treated claimant for diabetes
> and low back pain since August 2012. In fact at the September 18, 2012 office
> visit, [Plaintiff] denied anxiety, depression, hypersomnia, insomnia, loss of
> interests, and possible that [Plaintiff] denied trying to decrease substance abuse.

(*Id*. (internal citations to the record omitted).)

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, including the representative jobs of hand packager, cleaner and production inspector  (R. at 29-30.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (*Id.*)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

6

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.   ANALYSIS

The Undersigned agrees with Plaintiff, that the ALJ's failure to properly evaluate Dr. Kahn's opinion and provide good reasons for the weight assessed warrants reversal.  An ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c).  The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

8

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

In the instant case, the parties do not dispute that Dr. Kahn, Plaintiff's primary care doctor, is a treating physician.  As set forth above, the ALJ considered Dr. Kahn's opinions relating to Plaintiff's exertional and non-exertional limitations and accorded them "some weight," but only with respect to Dr. Kahn's opinion that she could lift between ten and twenty pounds.  (R. at 27.)  It appears that the ALJ rejected Dr. Kahn's opinions relating to Plaintiff's non-exertional limitations out of hand because he "is not a mental health specialist" and because of his mistaken belief that Dr. Kahn had "only treated [Plaintiff] for diabetes and low back pain since August 2012."  (*Id.*)  The ALJ also noted that a September 2012 treatment note reflected that Plaintiff had denied a number of symptoms.

The reasons the ALJ offered, however, do not constitute good reasons for rejecting Dr. Kahn's assessment of Plaintiff's non-exertional limitations and instead demonstrate that he failed to properly consider the records reflecting Dr. Kahn's treatment of Plaintiff.   As even the Commissioner concedes, the ALJ incorrectly stated that Dr. Kahn had not treated Plaintiff for her alleged mental impairments.  (*See* Dr. Kahn's Treatment Notes, R. at 295-96, 310, 312, 319, and 320 (reflecting treatment for Plaintiff's alleged anxiety and panic attacks).)  The ALJ also incorrectly concluded that Plaintiff's treatment relationship with Dr. Kahn did not begin until August 2012, when the record evidence reflects that he treated Plaintiff for her anxiety and panic

9

attacks as early as June 1, 2010.  (R. at 320.)  The ALJ's reference to a September 2012 treatment note that he characterizes as reflecting Plaintiff's denial of a variety of symptoms does not otherwise rehabilitate the foregoing errors.  Indeed, a closer review of that particular treatment record reflects that Plaintiff had presented that day for a "well woman exam" and physical, and that the portion of the treatment record the ALJ references is part of the record's form that Dr. Kahn likely neglected to complete, which is consistent with his failure to do so on nearly every occasion on which Plaintiff had specifically presented with complaints of anxiety and panic attacks.  (*See, e.g.*, R. at 319, 320, 310, and 312 (treatment notes reflecting Plaintiff's complaints of and/or Dr. Kahn's observations of Plaintiff's anxiety and related symptoms where Dr. Kahn had neglected to complete the check-the-box portion of the progress-note form reflecting particular symptoms).)

The ALJ's violation of the good reason rule was not harmless error.  The *Wilson* Court considered three possible scenarios that could lead the Court to a finding of harmless error.  378 F.3d at 547.  First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ."  *Id.* Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant."  *Id.*  Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)—provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Id.*  Since *Wilson*, the Sixth Circuit has continued to conduct a harmless error analysis in cases in which the claimant asserts that the ALJ failed to

comply with the good-reason requirement.  *See, e.g.*, *Nelson v. Comm'r of Soc. Sec.*, 195 F.

A'ppx 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the

good-reason requirement the ALJ met the goal by indirectly attacking the consistency of the

medical opinions); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007) (finding

that the facts did not satisfy potential harmless error justifications).  In this case, Dr. Kahn's

opinions concerning Plaintiff's non-exertional limitations are not "so patently deficient that the

Commissioner could not possibly credit [them]."  *Wilson*, 378 F.3d at 547.  Second, the ALJ's

decision is not consistent with Dr. Kahn's opinion given that the RFC he assessed does not

contemplate partial or full-day unscheduled absences from work occurring five more days per

month.  Finally, the ALJ's decision does not otherwise meet the goals of *Wilson*'s reason giving

requirement.

In sum, the Undersigned finds that the ALJ's failure to give good reasons for not

according controlling weight to Dr. Kahn's opinions warrants remand.  *See Hensley v. Astrue*,

573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545) ("We do not hesitate to

remand when the Commissioner has not provided 'good reasons' for the weight given to a

treating physician's opinion and we will continue remanding when we encounter opinions from

ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating

physician's opinion." (internal quotations omitted)).  Moreover, the ALJ's apparent failure to

consider Dr. Kahn's treatment records prior to August 2012 deprives his opinion of substantial

evidence and warrants remand.  *See Williamson v. Comm'r of Social Security*, No. 2:12-cv-244,

2013 WL 394572, *3 (S.D. Ohio Jan. 31, 2013) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th

Cir. 1995)) ("'An ALJ's failure to consider an entire line of evidence falls below the minimal

level of articulation required.'"); *Weaver v. Comm'r of Social Security*, No. 3:13-cv-713, 2015 WL 64873, *8 (E.D. Tenn. Jan. 5, 2015) ("In order to determine whether the ALJ's RFC assessment was supported by substantial evidence, the Court looks at whether the ALJ met his investigatory duties. . . . [An ALJ] . . . must investigate and consider the evidence in its entirety, especially critical pieces of evidence.").

In sum, it is **RECOMMENDED** that Plaintiff's contentions of error be **SUSTAINED**.

## VI.    CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  February 18, 2016                                         /s/ *Elizabeth A. Preston Deavers*
                                                                 ELIZABETH A. PRESTON DEAVERS
                                                                 UNITED STATES MAGISTRATE JUDGE